UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHELLE MIRAN and ROLANDO MIRAN, husband and wife,

Plaintiffs,

v.

AMERICA ONE FINANCE INC., a Washington corporation; ARGENT MORTGAGE CO. LLC, a Delaware corporation; CITI RESIDENTIAL LENDING INC., a Delaware corporation; ACTION ESCROW PLLC, a Washington limited liability company; ANTHONY Z. SZABO and JANE DOE SZABO, husband and wife and the marital community comprised thereof,

Defendants.

CASE NO. C07-5710BHS

ORDER DENYING WITHOUT PREJUDICE ACTION ESCROW PLLC, ANTHONY Z. SZABO, AND JANE DOE SZABO'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Action Escrow PLLC, Anthony Z. Szabo and Jane Doe Szabo's ("moving Defendants") Motion for Summary Judgment (Dkt. 34). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion without prejudice for the reasons stated herein.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On December 26, 2007, Plaintiffs filed suit in federal court alleging violations of the Truth in Lending Act, the Washington Mortgage Brokers Protection Act, and the Washington Consumer Protection Act and seeking to restrain or enjoin the sale of their

ORDER - 1

home. Dkt. 1. Defendants have answered the complaint. Dkts. 13, 14, 17, 23. On July 22, 2008, Plaintiffs were granted leave to amend their complaint to add a cause of action for wrongful foreclosure. Dkt. 30 at 2. On July 17, 2008, Defendants Action Escrow PLLC, Anthony Z. Szabo, and Jane Doe Szabo moved for summary judgment. Dkt. 34. The amended complaint was filed on July 23, 2008. Dkt. 36.

Unless otherwise indicated, the following facts are undisputed or taken in the light most favorable to Plaintiffs, the nonmoving parties: In July of 2005, Plaintiffs Rolando and Michelle Miran, along with Ms. Miran's father, Domingo Ramil, obtained a home mortgage loan from Argent Mortgage. The loan was brokered by Eliza Buatista of Defendant America One Mortgage. Ms. Bautista recommended that Mr. Ramil serve as a co-borrower on Plaintiffs' loan. Anthony Szabo, through Defendant Action Escrow, served as the escrow agent. According to Plaintiffs, Mr. Szabo was responsible for closing the loan with the Mirans and Mr. Ramil. At the time of closing, Mr. Szabo was an attorney admitted to practice in Washington.

According to Plaintiffs' settlement statement, America One was to be paid an "origination fee" of $3,933, an "application fee" of $490, and a "processing fee" of $500. America One was also to be paid $3,933 as a yield spread premium ("YSP"), which is a fee paid by lenders to brokers. Plaintiffs contend that Argent Mortgage paid America One a YSP in exchange for brokering Plaintiffs' loan at a higher interest rate.

The interest rate on Plaintiffs' loan was initially set at 8%. After two years, Plaintiffs' interest rate would adjust to a minimum rate of 8% and a maximum rate of 14%. The adjusted rate was computed by adding 6% to the 6-month "LIBOR" rate and would adjust every six months by a maximum of 1%. The practical effect of these terms was that Plaintiffs' interest rate was set to increase by 1% every six months.

Plaintiffs contend that they informed Ms. Bautista that they could afford monthly payments of approximately $1,300 and that Ms. Bautista assured Plaintiffs that the loan would require payments of less than $1,300. Dkt. 39 at 1-2.

1 | Plaintiffs contend that Ms. Bautista told Plaintiffs that they were required to pay
2 | $7,000 in advance, that $1,000 was to be paid immediately to Action Escrow, that
3 | America One would advance the remaining $6,000 on Plaintiffs' behalf, and that
4 | Plaintiffs could repay the $6,000 in installments to Ms. Bautista. *Id.* at 2.
5 | On July 2, 2005, Ms. Miran paid $1,000 to Action Escrow. *Id.*; Dkt. 39, Exh. B at 8. In
6 | July and August of 2005, Plaintiffs paid Ms. Bautista the remaining $6,000. According to
7 | Plaintiffs, Ms. Bautista required payments in cash.

On July 24, 2005, Ms. Bautista contacted Ms. Miran and informed her that the loan must be closed immediately and that Plaintiffs would lose the house they sought to purchase and all funds advanced if they failed to close the loan immediately. Dkt. 39 at 2. Plaintiffs were in San Francisco at the time. *Id.* Plaintiffs contend that they did not have sufficient time to review the loan documents and therefore did not realize that the documents they signed contained terms that differed from the terms on the good faith estimate they signed. *Id.* at 3. Mr. Miran flew back to Seattle and delivered the loan documents to Ms. Bautista. Plaintiffs contend that while several of their loan documents were notarized by Mr. Szabo, Plaintiffs did not sign their loan documents in Mr. Szabo's presence and have never met Mr. Szabo. *See* Dkt. 39 at 3.

Plaintiffs contend that the loan terms on documents they signed conflict with representations made in written documents kept in Plaintiffs' Action Escrow file and with written representations made to Plaintiffs. Specifically, Plaintiffs contend that their loan file contains a good faith estimate and truth in lending disclosure generated on November 5, 2000, signed by Plaintiffs on July 25, 2005, and reflecting an interest rate of 8% fixed for 30 years. Plaintiffs contend that their loan file also contains unsigned disclosures including an adjustable rate of 8%. Plaintiffs also contend that the YSP, $1,000 payment to Action Escrow, and cash payments to Ms. Bautista were not properly disclosed.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## III. DISCUSSION

The moving Defendants seek summary judgment on the grounds that Mr. Szabo's services as a notary on Plaintiffs' loan documents did not proximately cause any injury to Plaintiffs and are not actionable under the Consumer Protection Act. Dkt. 34 at 5-7.[1] The moving Defendants also contend that Mr. Ramil is an indispensable party and that Plaintiffs should be afforded an opportunity to join Mr. Ramil as a plaintiff. *Id.* at 11.

### A. CONSUMER PROTECTION ACT

Washington's Consumer Protection Act ("CPA") creates a private cause of action: "Any person who is injured in his or her business or property by a violation of RCW 19.86.020 ["unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce"] . . . may bring a civil action." RCW 19.86.090. The elements of a private CPA violation are (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) and causes injury to the plaintiff in his or her business or property; and (5) such injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986).

Regarding the second element, trade or commerce "includes the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2). The first two elements of a CPA violation may be proved through direct evidence or may be established by a showing that the alleged act constitutes a per se unfair trade practice. A per se unfair trade practice exists when, by statute, the Legislature declares an unfair or deceptive act in trade or commerce and the statute has been violated. *Id.* at 786. Of course, not every statutory violation falls within the CPA. *State v. Schwab*, 103 Wn.2d 542, 549 (1985).

---

[1] The moving Defendants also contend that Plaintiffs fail to create issues of fact as to whether Mr. Szabo was involved in a civil conspiracy or committed legal malpractice. The amended complaint does not include claims for civil conspiracy or malpractice, and the Court therefore does not reach these contentions.

ORDER - 5

The third element, public interest, depends upon the nature of the dispute. In a private dispute, the public interest prong depends upon "the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion." *Hangman Ridge*, 105 Wn.2d at 790. In a consumer transaction, the court must examine several factors to determine whether the public interest is impacted:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?

*Id.* Where the transaction was essentially a private dispute, as between an escrow agent and a client, the following factors may indicate the requisite public interest: "(1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?" *Id.* at 790-91.

Claims regarding an attorney's competence or strategy are not recognized under the CPA. *Manteufel v. Safeco Ins. Co. of America*, 117 Wn. App. 168, 174 (2003). Attorneys may be held liable under the CPA for commercial services performed "outside the practice of law" and constituting a "commercial enterprise." *Styrk v. Cornerstone Investments, Inc.*, 61 Wn. App. 463, 471 (1991). Claims of mere negligence or malpractice are insufficient. *Haberman v. Washington Public Power Supply System*, 109 Wn.2d 107, 169-170 (1987).

Lawyers who "[c]los[e] real estate transactions and act[] as an escrow agent for a fee" are engaged in commercial services that are not immune from the CPA. *Styrk*, 61 Wn. App. at 471. An escrow agent owes a fiduciary duty to "conduct the transaction with scrupulous honesty, skill and diligence" and to strictly comply with the escrow

agreement. *Id.* at 472. An escrow agent may be held liable for breach of escrow instructions. *Id.*

The moving Defendants' motion is premised upon Mr. Szabo's role as a notary for Plaintiffs' loan transaction. *See, e.g.*, Dkt. 34 at 3 ("Mr. Szabo's wrongful conduct seems to be limited to notarizing documents that the Mirans admit they signed but which they claim they did not sign in front of Mr. Szabo."). Plaintiffs contend that Mr. Szabo's liability is premised upon his status as an escrow agent in Plaintiffs' loan transaction. Dkt. 37 at 7. Plaintiffs also contend that there are issues of fact as to Mr. Szabo's relationship with Ms. Bautista, whose actions Plaintiffs contend amount to fraud and theft. *Id.* at 11-12. For example, the moving Defendants have offered evidence of payments from Action Escrow to Ms. Bautista. Dkt. 34, Exh. 2 at 7, 12.

For the first time in the reply, the moving Defendants contend that Mr. Szabo's actions as an escrow agent do not amount to a CPA claim. *See* Dkt. 41. The response and reply demonstrate that there are issues of fact as to the extent of Mr. Szabo's role in the transaction and whether Mr. Szabo's actions satisfy his fiduciary duty and otherwise manifest honesty, skill and diligence. Therefore, summary judgment on the record presented thus far would be premature.

## B. FAILURE TO JOIN DOMINGO RAMIL

The moving Defendants contend that Mr. Ramil is an indispensable party. Federal Rule of Civil Procedure 19 governs joinder of parties and provides, in part, as follows:

> (a) Persons Required to Be Joined if Feasible.
> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

> (2) Joinder by Court Order. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.
> (3) Venue. If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.
> (b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19. Plaintiffs contend that Mr. Ramil has quitclaimed all of his interests in the underlying property to Plaintiffs. Dkt. 40, Exh. A at 3. Plaintiffs' response does not address the extent to which Mr. Ramil's interests may be affected by this matter or whether Mr. Ramil remains liable on the loan that is the subject of this matter. Accordingly, the parties shall show cause, if any they may have, why Mr. Ramil should not be joined as a plaintiff to Federal Rule of Civil Procedure 19.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Action Escrow PLLC, Anthony Z. Szabo, and Jane Doe Szabo's Motion for Summary Judgment (Dkt. 34) is **DENIED WITHOUT PREJUDICE**, and the parties shall show cause, on or before September 15, 2008, why Domingo Ramil should not be joined as a plaintiff in this action. Responses are due September 22, 2008,

replies are due September 25, 2008, and this matter is noted for consideration on September 26, 2008.

DATED this 25th day of August, 2008.

BENJAMIN H. SETTLE
United States District Judge